UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GARRY LEE MILLER o/b/o K.A.M.,

                Plaintiff,                              Case # 19-CV-498-FPG

v.                                                      DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

## INTRODUCTION

Garry Lee Miller ("Plaintiff") brings this action on behalf of his minor daughter ("K.A.M.") pursuant to Title XVI of the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") that denied his application for Supplemental Security Income ("SSI"). ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 1383(c).

On June 11, 2014, Plaintiff applied for SSI with the Social Security Administration ("the SSA") on K.A.M.'s behalf. Tr.[1] 93. He alleged that K.A.M. had been disabled since August 28, 2012, due to Attention Deficit Hyperactivity Disorder ("ADHD") and autism. *Id.* On July 28, 2017, K.A.M. and Plaintiff testified at a hearing before Administrative Law Judge Maria Herreo-Jaarsma ("the ALJ"). Tr. 44-83. On September 12, 2017, the ALJ issued a decision finding that K.A.M. was not disabled. Tr. 15-30. On March 1, 2019, the Appeals Council denied K.A.M.'s request for review. Tr. 1-6. This action seeks review of the Commissioner's final decision. ECF No. 1.

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 8

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure Rule 12(c). ECF Nos. 14, 17. For the reasons that follow, Plaintiff's motion is GRANTED and the Commissioner's motion is DENIED.

## LEGAL STANDARD

### I. District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II. Child Disability Standard

An individual under 18 years old will be considered disabled if she has a medically determinable physical or mental impairment that results in marked and severe functional limitations that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner must follow a three-step process to evaluate child disability claims. *See* 20 C.F.R. § 416.924. At step one, the ALJ determines whether the child is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.924(b). If so, the child is not disabled. If not, the ALJ proceeds to step two and determines whether the child has an impairment, or combination of impairments, that is "severe," meaning that it causes "more than minimal functional

limitations." 20 C.F.R. § 416.924(c). If the child does not have a severe impairment or combination of impairments, she is "not disabled." If the child does, the ALJ continues to step three.

At step three, the ALJ examines whether the child's impairment meets, medically equals, or functionally equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 416.924(d). To determine whether an impairment or combination of impairments functionally equals the Listings, the ALJ must assess the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). To "functionally equal the listings," the child's impairment(s) must cause "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).

## DISCUSSION

### I. The ALJ's Decision

At step one, the ALJ found that K.A.M. had not engaged in substantial gainful work activity. Tr. 18. At step two, K.A.M.'s ADHD and autistic disorder were found to be severe impairments. Tr. 18.

The ALJ made the following findings with respect to the six functional domains: marked limitation in acquiring and using information, Tr. 21; less than marked limitation in attending and completing tasks, Tr. 23; less than marked limitation in interacting and relating with others, Tr. 25; no limitation in moving about and manipulating objects, Tr. 27; less than marked limitation in caring for yourself, Tr. 28; and a less than marked limitation in health and physical well-being, Tr. 29.

In making those determinations, the ALJ gave "moderate weight" to the opinions of Jane R. Pulley, K.A.M.'s sixth grade teacher, and Rebecca McNutt, K.A.M.'s special education teacher. Tr. 20. The ALJ found that while Ms. Pulley and Ms. McNutt were not acceptable medical sources, their opinions were nonetheless entitled to consideration given their opportunities to observe K.A.M. on a daily basis. *Id.*

The ALJ gave Medicaid Services Coordinator Kathleen Tierney's opinion no weight because she was not an acceptable medical source and a determination of disability is an ultimate issue reserved for the Commissioner. *Id.* Consultative examiner Christine Ransom, Ph.D.'s opinion was given great weight because it was consistent with the record as a whole. *Id.* The ALJ gave partial weight to the opinion of David S. Nathanson, Ph.D., a psychologist whom K.A.M. saw in connection to her entry into Child Family Services because it was based on a one-time, independent examination from before K.A.M. was taking proper medication. *Id.* The opinion of Jill E. Hamilton, Ph.D., whom K.A.M. saw to determine her eligibility for services, was given partial weight for the same reason. *Id.*

## II.   Analysis

Plaintiff advances several arguments why the ALJ's decision is not supported by substantial evidence: (1) the ALJ failed to address K.A.M.'s substantial language impairments in the interacting and relating with others domain; (2) the ALJ erroneously discounted Dr. Nathanson's and Dr. Hamilton's opinions; and (3) the ALJ should have found that K.A.M. had a marked limitation in the caring for yourself domain. Plaintiff argues that absent any one of these errors, K.A.M. would have been found to have a marked limitation in at least one other domain, rendering her disabled. ECF No. 14-1 at 17, 19, 23, 24. The Court agrees with Plaintiff's first

argument, without reaching the others, and remands for reconsideration of K.A.M.'s speech and language issues as they affect her ability to interact and relate with others.

When determining a claimant's function in the interacting and relating with others domain, the Commissioner will "consider how well you initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i). By age twelve, "you should be able to develop more lasting friendships with children who are your age," "be well able to talk to people of all ages, to share ideas, tell stories," and "speak in a manner that both familiar and unfamiliar listeners readily understand." *Id.* § 416.926a(i)(2)(iv). By adolescence, "you should be able to initiate and develop friendships with children who are your age and to relate appropriately to other children and adults, both individually and in groups," "be able to intelligibly express your feelings, ask for assistance in getting your needs met, seek information, describe events, and tell stories." *Id.* § 416.926a(i)(2)(v). Some examples of limitations a claimant might exhibit in this area include "hav[ing] no close friends," being "overly anxious or fearful of meeting new people," and "hav[ing] difficulty communicating with others; e.g. in using verbal and nonverbal skills to express yourself, carrying on a conversation, or in asking others for assistance." *Id.* § 416.926a(i)(3)(ii)-(v); *see also Dunaway ex rel. E.B. v. Colvin*, No. 14-CV-6301P, 2015 WL 5712297, at *13-14 (W.D.N.Y. Sept. 29, 2015).

Here, the ALJ did not take full account of all the record evidence documenting K.A.M.'s speech and language problems as they affect her ability to interact and relate with others. Although the Commissioner now makes a conclusory argument that the ALJ "properly considered language delays" in the interacting and relating with others domain, the ALJ does not cite to evidence of this in her decision. ECF No. 17-1 at 20.

In analyzing K.A.M.'s functioning in the interacting and relating with others domain, the ALJ made much of K.A.M.'s improvement while on her ADHD medication but acknowledged the existence of contrary evidence in the record such as K.A.M.'s lack of a best friend and her need to improve cooperation with peers. Tr. 25. With respect to the effects of K.A.M.'s speech and language issues on her ability to interact and relate to others, the ALJ only noted that K.A.M. "struggles to communicate with her peers." Tr. 25. The ALJ found K.A.M. had a less than marked limitation in this domain. Tr. 25. Though the ALJ's discussion of the evidence in this domain was detailed, it focused on Plaintiff's at-times contradictory testimony; Ms. McNutt's observation that K.A.M. can usually handle her anger; a comment in an individualized education program ("IEP") that K.A.M. had good relationships with people once she got to know them; and a report from Kathleen Tierney that K.A.M. has difficulty with social skills. Tr. 25-26.

The ALJ did not discuss other extensive evidence from these same sources detailing K.A.M.'s considerable language and speech issues. For example, even with her ADHD symptoms controlled for fifteen hours a day with medication, her school observed in her IEPs that K.A.M. still had "moderate-severe expressive language deficits," "significant difficulty in verbally expressing information" and "does not appear to be aware of listener comprehension as she uses a very rapid rate of speech, minimal eye contact, and low vocal intensity." Tr. 239, 653, 670. Her "[p]ragmatic/social language skills remain inconsistent and vary from day to day" and "she has exhibited instances of inappropriate behaviors on occasion (repeatedly making animal sounds, 'beeping,' and refusing to verbally participate in group activities)." Tr. 239-40.

K.A.M.'s impairments do not merely impact her academic performance. Her teachers repeatedly and consistently noted that her speech issues in particular caused problems with socialization and interacting with others. For example, her 2014-2015 school year IEP stated that

6

she "enjoys interacting with both peers and adults but struggles to form friendships due to her lack of maturity. She will often bark, meow, or make other animal noises when asked a question or given a direction. This also causes a challenge when trying to connect with peers." Tr. 240. Ms. Pulley noted K.A.M. had a "very serious problem" "[r]elating experiences and telling stories" and "using language appropriate to the situation and listener." Tr. 255. K.A.M. had an "obvious problem" with making and keeping friends and had "very limited interactions w[ith] peers although she likes to be 'bossy' telling them what to do." Tr. 255. Ms. McNutt noted that K.A.M. is "kind and helpful and wants to make friends but does not do so in an age-appropriate way" and "struggles to communicate with her peers." Tr. 296.

According to her 2015-2016 IEP, K.A.M. continued to "[d]emonstrate[] limited immature social interactions with peers," although the animal noises were not being observed in therapy. Tr. 653, 656. K.A.M.'s 2016-2017 IEP noted that she had "difficulty forming relationships with peers because she continues to be bossy when a student isn't doing what they should be." Tr. 670. K.A.M.'s speech remained difficult to follow—despite her father's estimate that he could understand her speech 75 percent of the time, Tr. 75, K.A.M.'s teachers noted repeated issues in understanding her due to her rate and clarity of speech. Tr. 239, 294, 653, 655, 670.

Discussion of these considerable speech and language problems in the interacting and relating with others domain is absent from the ALJ's opinion, which only cursorily acknowledges their existence. Tr. 25. This was not harmless error. When promulgating the regulations for the interacting and relating with others domain, "the Social Security Administration specifically recognized that communication comprises speech and language, and that language is used both for learning and for interacting and relating." *Dunaway*¸ 2015 WL 5712297, at *14 (quotation and citations omitted). "A child's language abilities are equally important in the domain of interacting

7

and relating with others," *Miles ex rel. J.M. v. Astrue,* 775 F. Supp. 2d 715, 727 (S.D.N.Y. 2011) (citing S.S.R. 09-5p, 2009 WL 396026, *5 (2011)), and "a child's problems with speech and language now need to be assessed in both the 'acquiring and using information' domain as well as the 'interacting and relating with others' domain." *Kittles ex rel. F.L. v. Barnhart,* 245 F. Supp. 2d 479, 489 (E.D.N.Y. 2003).

Thus, remand is required because, despite the ALJ's detailed discussion of other evidence relevant to this domain, K.A.M.'s speech and language deficits were ignored; they need to be addressed more robustly to properly determine K.A.M.'s ability to interact and relate with others. *Lavalley ex rel. A.W. v. Colvin*, No. 7:12-CV-771 (MAD/VEB), 2013 WL 2444203, at *13-14 (N.D.N.Y. June 5, 2013) (where ALJ found marked limitation with interacting and relating with others but also referenced numerous problems claimant had in this domain, ALJ's failure to "reconcile this substantial body of evidence (which indicated a very serious impairment in Claimant's ability to interact with and relate to others) with his finding of a less than extreme limitation in this domain" was error); *see Dunaway*, 2015 WL 5712297, at *16 (finding "the ALJ's discussion of this domain, although expanded from his prior decision" still insufficient because it failed to discuss, *inter alia*, the intelligibility or fluency of claimant's speech or considerable other evidence of limitations in this domain); *Thompson v. Barnhart*, No. 02 CV 4930(SJ), 2004 WL 896663, at *7 (E.D.N.Y. Mar. 26, 2004) (finding analysis of this domain insufficient because, *inter alia*, "the ALJ fail[ed] to adhere to the SSA regulations by not considering the impact of [claimant's] language delays on his socialization skills").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 14) is GRANTED, the Commissioner's motion for judgment on the pleadings (ECF No. 17) is

DENIED,[2] and the matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court shall enter judgment and close this case.

    IT IS SO ORDERED.

Dated: July 28, 2020
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

---

[2] Plaintiff filed his reply brief as another motion for judgment on the pleadings. ECF No. 18. This motion is therefore denied as moot.